```
 1              UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS
 2
                                    Civil Action
 3                                  No. 13-10277-WGY

 4

 5   * * * * * * * * * * * * * * *
                                 *
 6   BOSE CORPORATION,           *
                                 *
 7           Plaintiff,          *
                                 *
 8   v.                          *   MARKMAN HEARING
                                 *
 9   SDI TECHNOLOGIES, INC.,     *
                                 *
10           Defendant.          *
                                 *
11   * * * * * * * * * * * * * * *

12

13           BEFORE:  The Honorable William G. Young,
                        District Judge
14

15   APPEARANCES:

16           FISH & RICHARDSON, P.C. (By Mark J. Hebert,
         Esq. and Jolynn M. Lussier, Esq.), One Marina Park
17       Drive, Boston, Massachusetts 02110
                 - and -
18           FISH & RICHARDSON, P.C. (By Noah C.
         Graubart, Esq.), 1180 Peachtree Street, NE, 21st
19       Floor, Atlanta, Georgia 30309, on behalf of the
         Plaintiff
20
                 FOLEY & LARDNER, LLP (By Matthew B. Lowrie,
21       Esq. and Aaron W. Moore, Esq.), 111 Huntington
         Avenue, Boston, Massachusetts 02199, on behalf of
22       the Defendant

23

24                                  1 Courthouse Way
                                    Boston, Massachusetts
25
                                    January 15, 2014
```

1          **THE CLERK:**  All rise.  The United States District

2     Court is now in session, you may be seated.

3          Now hearing Civil Matter 13-10277, Bose Corporation

4     v. SDI Technologies.

5          **THE COURT:**  Good morning.  Would counsel identify

6     themselves.

7          **MR. HEBERT:**  Good morning, your Honor.  Mark Hebert

8     of Fish & Richardson for the plaintiff, Bose.

9          **MS. LUSSIER:**  Good morning.  Jolynn Lussier also

10    for Bose.  And with me here at the table is Noah Graubart

11    from our Atlanta office, and next to him is Maureen Brenner

12    who is an in-house lawyer at Bose Corporation.

13         **MR. LOWRIE:**  Matt Lowrie of Foley & Lardner on

14    behalf of the defendant, SDI.  With me at counsel table is

15    my partner, Aaron Moore.  Also in the courtroom is Marcos

16    Zalta who's the general counsel of SDI.

17         **THE COURT:**  Fine.  You are all welcome.

18         SDI's filed a motion to stay this matter which

19    seems to me to have some merit.  And at a minimum, and I

20    know that Bose hasn't really had a chance to respond, but at

21    a minimum I need some discussion about that, and we'll start

22    by asking SDI some questions here.

23         So, when do we have to get the final answer from

24    the Patent Trademark Appeal Board here?

25         **MR. LOWRIE:**  December, your Honor.

1          **THE COURT:**  Date?  The 3rd?

2          **MR. MOORE:**  It would be one -- I'm sorry, your

3     Honor.  A year from institution.  So they were instituted

4     December 11th and December 13th of last year.  The year

5     should be completed December 11th or 13th of this year.

6          **THE COURT:**  All right, fine.  Unless the director

7     gives them more time?

8          **MR. MOORE:**  Correct.

9          **THE COURT:**  Okay.

10         **MR. LOWRIE:**  Which hasn't happened yet, your Honor.

11    But, I mean, the director has to request it, has to show

12    cause.

13         **THE COURT:**  I know.  Has it happened in any case,

14    ever?

15         **MR. LOWRIE:**  Not yet, your Honor.  Although it's a

16    new proceeding.

17         **THE COURT:**  I understand it is.  Are you willing to

18    put the income from the sales of these allegedly infringing

19    products in escrow?

20         **MR. LOWRIE:**  My client is here and I would like to

21    consult.  But I would say that, not the revenue because that

22    wouldn't be reflective of the damages, but certainly -- so,

23    Bose in an earlier case had said a reasonable royalty would

24    be actually the same as what Apple charges as a royalty.

25    But that was their argument.  I think it's too much.  And

1  that was around three dollars a unit.  And I think SDI would

2  be willing to escrow --

3      **THE COURT:**  Not revenue but profits.  All profits.

4  Willing to do that?

5      **MR. LOWRIE:**  Profits would be a different number.

6  May I have just one moment, please, your Honor?

7      **THE COURT:**  Well, I've got other things.

8      **MR. LOWRIE:**  Yes.

9      **THE COURT:**  Yes, we'll give you the moment, in a

10  moment.

11      So, all this board does, though they have the final

12  word, is they decide validity.  If they rule the patent's

13  invalid, I'm bound by that, the courts are bound by it.  If

14  they rule the patent's valid you're stuck with that.

15  Correct?

16      **MR. LOWRIE:**  That is correct for the arguments that

17  were submitted or could have been submitted to the Patent

18  Office.

19      **THE COURT:**  What, you think you're going to come

20  back here after all of that and say this patent's invalid?

21      **MR. LOWRIE:**  That's not something that I expect

22  your Honor would be appreciative of unless there was really

23  something that is --

24      **THE COURT:**  It's not appreciative.  If I'm going to

25  stay anything you're going to waive that.  So that's another

1      thing.  So validity's off the table if I stay things.

2              Let's see.  What about infringement.  They have

3      nothing to say about infringement.

4              **MR. LOWRIE:**  That is correct, your Honor.

5              **THE COURT:**  Suppose the patent is valid and they

6      say it's valid.  Do you agree on infringement?  Because then

7      I could just figure out the damages and we'll be done with

8      it.

9              **MR. LOWRIE:**  No, your Honor, we do have

10     noninfringement defenses, some or all of which depend on

11     your Honor's claim construction.

12             **THE COURT:**  I understand.

13             Okay.  Now, before I give you that minute, because

14     I'm going to give you the minute, I know I'm going off on a

15     different, well, I'm not sure I'm going off at all, on a

16     different tack here.  But if they take all the profits and

17     put them in escrow, how are you hurt here?  And you know I

18     will be chomping at the bit.  If you win this case will go

19     to trial no later than March of next year.  So that's three

20     months to work out all this business about infringement.

21     The patent technology is not strikingly different than

22     something we've heard before.  So I don't really think that

23     Bose is hurt.

24             And to be utterly transparent, it seems to me that

25     since you've sunk your costs in having this hearing, we

1     ought to have this hearing anyway and then I will stay, or

2     administratively close, if they'll agree to these terms.  So

3     if I do that and we haven't lost any attorney time and

4     money.  My constructions will just, well, we'll have the

5     hearing, we'll see if I make constructions, and then they'll

6     just be there and we'll see where we are.

7          But before I ask you, now I did think of one other

8     thing.  Since you really like this patent administrative

9     agency proceeding, you'll agree to the tentative

10    constructions they've made, won't you?

11         **MR. LOWRIE:**  Not for purposes of the court case,

12    your Honor.  It's a different standard.  It's a different

13    standard.

14         **THE COURT:**  Oh, I understand.  I understand.  But

15    you see that's what's so bizarre here.  And I mean no

16    disrespect.  Because it is arguably a different standard,

17    and I don't say you're judicially estopped, you're clawing

18    your way into the administrative agency.  It's forum

19    shopping.  You think you have a better shot there than you

20    have before this Court and an American jury.  The act gives

21    you that shot and I must respect it and of course I will.

22    But if we're talking about costs to litigants, you want to

23    have argument that it's a different standard and have me

24    consider things afresh and the like.  Well, I hear you.  And

25    maybe -- I will hear you because I'm not going to waste our

1   time this morning.

2          But now, now Bose.  Why don't I just, if I give you

3   the hearing this morning and we can argue these differences

4   and sort it all out so you know, to the extent you can know,

5   to the extent I can get my mind around these things, what my

6   constructions are, why don't we stay this, well, I would

7   administratively close it, until the 13th of December.  It's

8   automatically reopened at that point because if the patent's

9   invalid then I will dismiss it, if the patent's valid it

10  will be on the March running trial list.

11          **MS. LUSSIER:**  Your Honor, as a practical matter,

12  the principal counsel for Bose is not here today.  We've not

13  conferred with them.  I would like the opportunity to

14  discuss that with the decision maker and we would get back

15  to you immediately.

16          **THE COURT:**  Yes, that's fine.  He's available by

17  phone, I'm sure.

18          **MS. LUSSIER:**  He's --

19          **MR. HEBERT:**  He's out of the country.

20          **MS. LUSSIER:**  He's out of the country actually.

21          **THE COURT:**  He's beyond the reach of cell phones.

22          **MR. HEBERT:**  Well --

23          **MS. LUSSIER:**  I don't believe so but --

24          **MR. HEBERT:**  He's, he's in China so there's a

25  time --

1           **MS. LUSSIER:**  A twelve hour difference.

2           But one of the things that's important to

3    understand is that the Patent Trial and Appeal Board has

4    instituted Inter Parties Review on certain of the claims

5    that have been asserted in this case, not all of them, at

6    this time.

7           **THE COURT:**  Right.  I understand.  I do understand.

8           **MS. LUSSIER:**  So -- right.

9           **THE COURT:**  But, again, all I'm trying to be is

10   practical.

11          So, here's what we're, here's what we're going to

12   do.  I'll give you a day to talk to them and SDI a day to

13   talk to their people.  But I haven't heard that you're hurt

14   if they will make these representations -- I'm not going to

15   insist that they agree with the PTAB's construction, and I

16   do intend to hear that.  But if they'll agree to these other

17   terms, they will escrow the profits, not some royalty,

18   they'll escrow the entire profits, and they'll -- I'm not

19   going to extend this if the director takes it into his or

20   her mind to extend it.  The case becomes activated the 13th

21   of December, 2014.  It's on the March running trial list.

22   We can sort out infringement at that time, and I'll do the

23   construction now to save everyone money.

24          I don't hear you tell me you're hurt.

25          **MR. HEBERT:**  There's, there's two, two additional

1    points I would like to make, your Honor.

2            THE COURT:  Go ahead.

3            MR. HEBERT:  First is regarding the schedule, it's

4    a little uncertain at this time because what SDI has done is

5    they've filed some brand-new Inter Party Requests.  These

6    are requests that they could have filed seven months ago.

7            THE COURT:  No, I'm --

8            MR. HEBERT:  And there's a --

9            THE COURT:  I'm, I'm not going for that.  You see,

10   they want something.  I'm trying to put appropriate limits

11   on what they want if they get where they say they want to

12   go.  But I'm transparent.  I'm indicating that I'm likely to

13   go there.  And their additional ones, you know, if you're

14   still standing or still standing on some sort of infringed

15   thing that hasn't been taken care of by the board you're

16   going to get your trial.  You're going to get your trial in

17   March.  But I am trying to avoid a system now that has us

18   doing things twice.

19           MR. HEBERT:  Yes, I understand.

20           THE COURT:  The easy way and the way -- I was

21   talking to a professor about this.  The easy way, of course,

22   now that we've got this, is for courts to say, oh, that's

23   it, go and do the agency process.  Oh, look how efficient it

24   is, it's 18 months, and I don't have to deal with it.

25           The other side of that, which I don't think we're

1   weighing enough, is that the patent keeps running all that

2   time and arguably, because they're not saying they're not

3   going to sell off this stock of what they have, arguably

4   infringement goes on during this time.  Now, 18 months isn't

5   bad in terms of a dispute resolution time period for a

6   patent dispute.  I can try to match that, but I don't think

7   I can beat it.  And I don't know people, I don't know a

8   court session that's faster.  That's my balance.

9           MR. HEBERT:  And just to finish in terms of the

10  schedule, we have a call tomorrow afternoon with the PTAB to

11  discuss the schedule and motions and various events in the

12  case.  And what's likely to come up will be this new request

13  that they put in and the potential impact it will have on

14  the schedule.

15          So they say it will be completed in December.  I

16  have my doubts about that.  If we can hold to December no

17  matter what's going on in the PTAB that would be one thing.

18          THE COURT:  That's what I'm talking about.

19          MR. HEBERT:  Okay.  But we wouldn't want it to

20  extend --

21          THE COURT:  No, no.  When I'm asking you are you

22  going to be injured, I contemplate administratively closing

23  this case until the 13th of December, 2014, and having the

24  parties then report to me on the next date, the 14th, the

25  status, and setting the case on a running trial list for

1    March 2015.  That's as far as I'm going.  If inefficiencies

2    are built into that then the parties are going to have to

3    bear the costs of those inefficiencies.

4            Now, it's clear that while I -- we're not

5    interested in whether I respect this process, it's matter of

6    law and I follow it.  But the truth is I do respect it.  And

7    I have no problem conforming the independent work of this

8    Court to the administrative agency that congress has

9    designated to make these determinations.  What I do have a

10   problem with is making patent litigation even slower and

11   more expensive than it is today.  And contrary to a number

12   of my colleagues, I don't think the way to do that is simply

13   for the courts to sit on their hands until some

14   administrative agency gets done doing whatever it does.  So

15   in that sense you have a very sympathetic judge.  But their,

16   their brief grabbed me and I'm trying to be practical.

17           Now, they may not go for this.  They're listening,

18   too, to the limitations I have.  They may have their own

19   strategic maneuvers and good luck to them.  But I don't hear

20   any genuine prejudice, if they would agree.  And we're going

21   to know whether they agree before they leave here because

22   they have the decision maker.

23           So --

24       **MR. HEBERT:**  The one issue of harm that I would

25   like to raise --

1              **THE COURT:**  Yes, please.

2          **MR. HEBERT:**  -- is the delay on the injunctive

3    relief.  Now, the delay we're talking about is not a

4    substantial delay, admittedly.  And what has happened is

5    during the pendency of the case they actually have reacted

6    by slowing down their sales of infringing products and

7    changing some of their products in part in respect of our

8    patent.  I would be concerned if during, if there is a stay,

9    if during that stay the marketplace suddenly changed and

10   they started flooding the market again with infringing

11   products.  And I would wonder if, if there was a change in

12   the marketplace if we could come back and ask to lift the

13   stay based on changed market conditions.

14          **THE COURT:**  I have a stock and I think adequate

15   institutional answer.  The Court can only deal with cases or

16   controversies.  An administrative closure is just that.  It

17   isn't a case or controversy, it's just a procedure.  The

18   world changes.  The doors of the courthouse are open.  But

19   I've made my orders and I've made them for prudential

20   reasons.

21          Okay.  So, you'll get your chance -- it looks like

22   the way I'm going is, let's hold this hearing, that's what

23   you all came for, we'll see where we stand on that, then

24   I'll recess.  I'm not going anywhere.  You talk to your

25   people.  If you agree to my conditions then I'm going to

1   administratively close it until the 13th of December.  All

2   right?

3           **MR. LOWRIE:**  Okay.  There's one point I wanted to

4   raise with your Honor just while we're on the subject.

5           **THE COURT:**  Sure.

6           **MR. LOWRIE:**  Your Honor talked about an escrow of

7   profits.  It would make meaningful operating difference I

8   would think to a company and no difference to a patent

9   holder if we did a bond as opposed to an escrow which is

10  what one does on appeal in appropriate circumstances as

11  well.

12          **THE COURT:**  That's fine.

13          **MR. LOWRIE:**  Thank you, your Honor.

14          **THE COURT:**  So long as it's an adequate bond.  Yes?

15          **MS. LUSSIER:**  And just so we're clear, the

16  conditions that you've recited, your Honor, would be the

17  escrow the profits in some manner, or they post a bond, for

18  the sales of all of what Bose has claimed to be the accused

19  products, and that validity is off the table.

20          **THE COURT:**  Oh, that's my --

21          **MS. LUSSIER:**  That's the --

22          **THE COURT:**  At least as to what -- yes, and

23  validity's off the table.

24          **MS. LUSSIER:**  So that when if, if and when the stay

25  is then lifted there will be no trial on invalidity --

1          **THE COURT:**  That is --

2          **MS. LUSSIER:**  -- in this case.

3          **THE COURT:**  -- correct.  I'm not -- that's correct.

4    We're clear on that.

5          All right.  So, now you're here for the Markman

6    hearing.  I think a way to proceed is to hear you -- if you

7    don't agree that I will follow what the Patent Trial Appeal

8    Board has done what weight shall I give to it?  Let's ask

9    the -- and I've been, I started out with SDI, so let's start

10   with Bose.

11         Do you agree with it?

12         **MS. LUSSIER:**  There are a number of constructions

13   the PTAB has --

14         **THE COURT:**  Them?  Do you agree with them?

15         **MS. LUSSIER:**  Not all of those constructions.

16         **THE COURT:**  And neither do they.

17         **MS. LUSSIER:**  What deference, you've asked what

18   deference should the Court give.

19         **THE COURT:**  I have.

20         **MS. LUSSIER:**  You need not give the PTAB any

21   deference to the extent that you have --

22         **THE COURT:**  Shouldn't I?

23         **MS. LUSSIER:**  Our position is that with the

24   exception of one term, which is the term dealing with any

25   one of a plurality of sources -- correct me if I'm wrong --

1          **MR. HEBERT:**  That's correct.

2          **MS. LUSSIER:**  -- that the PTAB in fact got it

3    exactly right, as to the multiple constructions that they

4    gave.

5          **THE COURT:**  Okay.  Okay.  But you think they got

6    that one wrong?

7          **MS. LUSSIER:**  Absolutely.

8          **THE COURT:**  Okay.  That's helpful as a place to

9    start, because I will tell you coming on the bench that's

10   where I start.  I want to hear argument.  Only I'm not as

11   firm as the Bose people.  It seems to me that their other

12   constructions all make good sense to me.  That one I have

13   questions about, though it's arguable is the way I could

14   state it.

15         So now let's, let's turn to Bose.  What, as a

16   practical matter, what deference should I give to the outfit

17   that ultimately is going to make the call here, not me.

18         **MR. LOWRIE:**  So, I would say, your Honor, that the

19   answer is directly derivable from the principles that are

20   applied.  So, the Patent Office applies a broadest

21   reasonable construction.  Not a correct construction, that

22   would be a binding court, but broadest reasonable.  So, if

23   they were to provide a narrow construction then a Court may

24   look at that and say I shouldn't go broader than that.  And

25   if the patentee makes an argument they're actually creating

 1    a record that a Court would use, and perhaps the Patent

 2    Office won't, with respect to what that claim terms means.

 3    You've got estoppels and everything else associated with the

 4    prosecution history.  But the Patent Office may or may not

 5    look at a broadest reasonable.  So a deference if it adopts

 6    a narrower construction.  If it adopts a broad construction,

 7    the Court should say, well, okay, at least be that or

 8    something narrower in light of the specification of what

 9    should it be.  So that's the principles.

10         And, your Honor, I have had a case where the

11    International Trade Commission adopted a narrow

12    construction, found no infringement.  The board, aware of

13    that, adopted a broad construction and found it invalid and

14    they ended up withdrawing their appeals and everything.  So

15    the patent's now both invalid and not infringed.

16         So, it is the case that judicial bodies will reach

17    different decisions, particularly narrower constructions,

18    than what's done in the board and it's driven by the legal

19    standards.

20         **THE COURT:**  I understand that as a theoretic

21    matter.  I guess now I'm turning to the disputed claims

22    here.  And why don't you signal to me -- you think that they

23    got the configured to provide audio information from any of

24    a plurality of sources, you think they got that one right.

25         **MR. LOWRIE:**  Yes, your Honor.  Or at least that it

1    would -- I think, I think perhaps they got them all right

2    for the standard they were applying.  It's just a different

3    standard that your Honor applies.

4         THE COURT:  Then, then maybe -- I'll put it to you

5    this way.  Why shouldn't I, given the standard that I am

6    required to apply, why shouldn't I follow their

7    construction?

8         MR. LOWRIE:  I think it's not a question of

9    following.  I think --

10        THE COURT:  Adopt their construction.

11        MR. LOWRIE:  Because it's a different standard,

12   your Honor.  And so I think your Honor needs to apply the

13   standard and see if you get, the different standard, and see

14   if you get the same result, your Honor.

15        THE COURT:  And when I do that wouldn't I come out

16   the same way?

17        MR. LOWRIE:  For most of them, I think so.  We have

18   an argument on computer.  And with respect to computer, I

19   view that as, you walk into an Apple store and say I need a

20   computer, they don't send you to the iPod section.  And so

21   even with a proposed thing of ordinary meaning, which is I

22   think not applicable, it's a different thing.  And, and if

23   what is told to the jury apply ordinary meaning in 2014 if

24   this case were to go to trial then --

25        THE COURT:  2015.

1          **MR. LOWRIE:**  -- 2015, then, your Honor, we would be

2     looking at what did one mean when they walked into that

3     store and said computer in the year 2000 and not the year

4     2015.  And so for that reason the board's not looking at

5     that.  The board's not concerned about those things.

6     They're applying broad definition.  And when Bose comes in

7     and says, well, audio source could include a CD player and

8     that's not a computer, my reaction is why isn't that a

9     computer, it's got a processor in it just like a cell phone

10    does.  So there's a standard because of the context of

11    dealing with the jury and dealing with giving the plaintiffs

12    proper scope rather than going to the Patent Office where it

13    says broadest reasonable and if you meant something

14    different you're going to need to be clear about that.

15          **THE COURT:**  All right.  Thank you.

16          **MS. LUSSIER:**  Your Honor, may I respond to

17    those points?

18          **THE COURT:**  You may.

19          **MS. LUSSIER:**  The standard that the PTAB applies is

20    the broadest reasonable construction consistent with the

21    specification.  The PTAB with respect to the term configured

22    to provide audio information from any one of a plurality of

23    sources, including the two listed sources, did not correctly

24    apply its own standard.  So, to simply adopt what the PTAB

25    has done is to adopt a mistake.

1          **THE COURT:**  Well, except --

2          **MS. LUSSIER:**  And so therefore --

3          **THE COURT:**  -- except they --

4          **MS. LUSSIER:**  -- no deference should be made.

5          **THE COURT:**  -- they did it just right.  If we look

6     at the outcome, I heard you say they did it exactly right

7     save as to the phrase configured to provide audio

8     information from any of a plurality of sources.

9          **MS. LUSSIER:**  Exactly.

10          **THE COURT:**  All right.

11          **MS. LUSSIER:**  But in that particular situation the

12    PTAB ignored the claim language.

13          **THE COURT:**  We'll, we'll --

14          **MS. LUSSIER:**  We'll get to that.

15          **THE COURT:**  -- get to that one.

16          **MS. LUSSIER:**  Okay.

17          **THE COURT:**  But the rest of it, whatever standard

18    they used, the construction they came up with is one with

19    which you agree.

20          **MS. LUSSIER:**  That's right.

21          As to computer, the point with respect to

22    computer --

23          **THE COURT:**  Well, let me, let me impose some

24    discipline on this so we can get to the matters that really

25    are going to be disputed.

```
 1                  I've been very aided by the decision of the Patent
 2       Trial Appeal Board.  And so we're clear, I'm adopting their
 3       construction, using proper standards, of computer, network,
 4       and audio information from the network via the computer.
 5       Unfortunately -- so that's taken care of.
 6                  Then you people have really asked to have eleven
 7       claims construed.  That's a very large number.  I don't
 8       think we're going to do that much.  Some of the
 9       constructions are simply the ordinary and customary meanings
10       and I'll take care of those and then where we need argument
11       we will deal with it.
12                  First, I've spoken to computer and personal
13       computer.  I've spoken -- I have not spoken to the word --
14       yes, I have.  I've spoken to the word network and I follow
15       the Patent Trial Appeal Board.
16                  The claim receive audio information from the
17       computer corresponding to the digital musical files stored
18       on the computer, the Court is simply going to follow the
19       ordinary and customary meaning of those terms.
20                  The audio information from the network via the
21       computer, I adopt the construction of the Patent Trial
22       Appeal Board.
23                  The claim, the phrases close proximity and
24       adjacent, your dispute number 9, I'm simply, they're not, I
25       follow the ordinary and customary meaning.
```

1          All right.  And claim, what you denominate as

2    dispute number 11, the sound reproduction device is

3    configured to respond to signals received from the computer,

4    I adopt the ordinary and customary meaning.

5          Now, with those matters taken care of that leaves

6    us plenty to construe and let's get to it.

7          We'll start then with the issue which has been

8    fully vetted before the Patent Trial Appeal Board as to

9    whether any one of a plurality of sources means one source

10   or at least two sources.  The Patent Trial Appeal Board

11   adopts the position that SDI adopts here.  Bose differs.

12   I'll hear Bose.

13        **MS. LUSSIER:**  Your Honor, we do have a set of

14   slides most of which are irrelevant at this point.  We would

15   like to hand them up though.

16        **THE COURT:**  I'm happy to receive them.

17        **MS. LUSSIER:**  The slides that we have, and I'll

18   only point to a few of them, that relate to this particular

19   issue begin on page 19, on slide 19.

20        The PTAB as well as SDI focused on two three-letter

21   words, any one, and the PTAB relied on the dictionary

22   definition for that and went no further.

23        The claim language itself confirms that any, from

24   any one of a plurality of sources, including digital music

25   files stored on a computer and a network accessible via the

1    computer, means that the computer at minimum must be

2    configured to provide audio information from each of those

3    listed sources.

4         The PTAB as well as SDI have put blinders on.  They

5    do not want this Court to consider the surrounding language,

6    that's this including phrase that identifies the conjunctive

7    list of sources.  It's phrased in the conjunctive form and.

8    And that means that the, that means pursuant to SuperGuide,

9    a Federal Circuit case, the use of the conjunctive form

10   means that the claim must include each element in it.

11        The phrasing is also confirmed by two of the

12   district court cases that we have cited and that the PTAB,

13   that neither the PTAB nor SDI have been able to coherently

14   able to distinguish.  That is Zapmedia as well as Kenall.

15   And in both of those cases they construe the exact phrasing

16   that is at issue here, any one of, as each of.

17        **THE COURT:**  Each of more than one.

18        **MS. LUSSIER:**  Right.  The term -- in the claim

19   recall that it says from any one of a plurality of sources,

20   and your Honor has in fact previously construed plurality as

21   meaning at least two.  The claim identifies specifically --

22        **THE COURT:**  Where have I done that?

23        **MS. LUSSIER:**  I'm sorry?

24        **THE COURT:**  Where have I done that?

25        **MS. LUSSIER:**  In the prior '765 case, the term

 1     plurality was the subject of one of the particular claim

 2     terms in there and you had construed it as such.

 3            THE COURT:  Right.  All right, I think I understand

 4     the argument.

 5            What does SDI say?

 6            MR. LOWRIE:  Thank you, your Honor.

 7            In terms of the plain language, if one were to say

 8     plurality is two and it has to be configured to connect to

 9     two it eliminates --

10            THE COURT:  At least two.

11            MR. LOWRIE:  At least two.  -- it eliminates the

12     any one of.  It would just read to provide audio information

13     from a plurality of sources.  And that language has meaning,

14     which means basically one of plurality, which is what, in

15     other context similar to this one, the cases have said.

16            But if I could step back for a moment, your Honor,

17     just to be clear about what we're talking about.

18            So we're talking about configured to connect to a

19     computer that audio.  So what does that mean.  If we were

20     looking at a speaker system like -- and, you know, earbuds

21     have these audio connectors, you stick it into a phone or an

22     iPod or whatever, it has this audio connector speaker

23     system.  I have a carbon copy of one in my office.  It's got

24     that same kind of connector, you can stick it into an iPhone

25     or other things.  What is it about that connector, what

1    physical limitation, because this isn't -- you know, this is

2    supposedly covering it when the computer's not connected.

3    Right?  So what is the limitation that we're talking about

4    here with that little audio connector, for example, or a 30

5    pin connector on an Apple product, what is it?  That's just

6    a physical thing.  And it's configured to plug something

7    into it.  So, for example, if you say any one of a plurality

8    of sources you can connect five different iPhone 5's in it,

9    is that a plurality of sources because that physical thing

10   allows it to be plugged in?  You could do an iPod in it.

11   You could do anything into it.  So, really it's going to be

12   confusing.

13         We had this problem in the last case where your

14   Honor construed interface unit and then we went through all

15   the discovery because of an apparent misunderstanding about

16   what your Honor did.  And here, if we have this kind of a

17   ruling where we're saying, well, plurality means more than

18   one, and that is a simple way to look at it, I don't dispute

19   that, if we come in with a simple plurality is more than

20   one, it's going to end up with one of these situations where

21   we have a ruling that really in light of what's happening

22   here doesn't make any sense.

23         So, again, what we're talking about here is a

24   limitation about a connector that you can plug into more one

25   of the same thing or more than one of different things.

1           Another problem with kind of what's being proposed

2    here is the deviltry in the details.  Because let's suppose

3    I've got my iPod and I've gotten music from one computer

4    site and a different computer site and maybe from a flash

5    drive all into my computer and down into my iPod.  Is that

6    from a plurality of sources?  And how can you tell just by

7    looking at the speaker system which is what Bose says the

8    claim covers.  They say, because your Honor remembers, if it

9    required the computer to be there as well, then it would be

10   in direct infringement because SDI doesn't sell computers

11   with the speaker systems that they have.  Okay.

12          So, really here, when they say any one of, to give

13   that meaning it has to say you've got to be able to connect

14   the one.  And anything beyond that, I mean additional words

15   or a different way to phrase it could be done, but there

16   would be deviltry in the details if it's any one of more

17   than one different sources and that somehow we're supposed

18   to figure out, looking at infringement and validity, what

19   that means with respect to a connector that gets plugged

20   into something.

21          THE COURT:  Thank you.

22          Now, I think I've heard enough on that.  I find

23   this, this one particularly difficult.  So let's pass it for

24   a moment and let's see what we say about the fourth one that

25   is at issue, a connector located at least partially within

1    the housing that is configured to provide a physical and

2    electrical connection exclusively between the sound

3    reproduction device and the computer.

4         And here there are different definitions, and again

5    I'll start with Bose.

6         **MR. GRAUBART:**  Your Honor, good morning.  Noah

7    Graubart from Fish & Richardson.  I'm going to be addressing

8    this term.

9         I would like to quickly just for context, your

10   Honor, point out that this claim term resides in the body of

11   the claim, as you just recited, a connector configured to

12   provide this physical and electrical connection, whereas in

13   contrast the term we were just describing was in the

14   preamble where it's, the system is configured to connect to

15   a computer that's configured to provide audio from plurality

16   of sources.  So when Mr. Lowrie was talking about the little

17   connector he was referring to the wrong element.  There it

18   was, the system is configured to connect to a computer

19   that's configured.  So now we're moving to the term you're

20   asking about, your Honor.  So, we are --

21        **THE COURT:**  So, if -- I understand that.  So, if,

22   if you have your computer that has the music data from these

23   various sources that exactly, you say his example is exactly

24   what this patent addresses.

25        **MR. GRAUBART:**  This patent addresses the sound

 1    reproduction device that's configured to connect to that

 2    separate computer which is in turn configured to be able to

 3    receive audio information from different sources.

 4              THE COURT:  From those different sources.

 5              MR. GRAUBART:  Yes.

 6              THE COURT:  All right.  All right.

 7              MR. GRAUBART:  And here we're talking about the

 8    element that Mr. Lowrie was --

 9              THE COURT:  The connector.

10              MR. GRAUBART:  The connector.  That's right, your

11    Honor.

12              And so here, Bose's construction comes directly

13    from the file history where the patentee, as he's entitled

14    to do, defined the term as his own lexicographer and there's

15    nothing else in the intrinsic record to contradict that.

16    It's dispositive.

17              SDI's construction, on the other hand, has two

18    singular problems.  First of all, merely touching, the

19    notion that they've included in their touches only, that's

20    not a physical and electrical connection.  My feet are

21    touching the floor through my shoes, your Honor.  My shoes

22    are touching the floor.  But they're not physically and

23    electrically connected to the floor.  So, introducing this

24    notion of touches only, it's completely extraneous, it's

25    completely unmoored to the patent.  And, in fact, it

1    actually, with all due respect to SDI, leads to a relatively

2    absurd result.  If it can only touch, if the computer and

3    the sound reproduction device can touch each other and

4    nothing else they're floating in midair.  That's obviously

5    not what was described in the patent.

6         And so coming back full circle, when the patentee

7    went to the Patent Office in the file history and said

8    here's my definition, the one exactly that Bose is proposing

9    here, they said to the examiner -- and, your Honor, if you

10   look at slide 33.  I apologize, I should have put some

11   context before I started talking.  Slide 33 here of our

12   presentation is where Bose went to the Patent Office and

13   defined this, they specifically then told the examiner, and

14   go look at the specification, Figures 1 through 3, and the

15   corresponding, the corresponding description which you'll

16   see at slide 34 is the citation to that corresponding

17   description, they said here, look in the specification, this

18   is consistent with what I'm telling you is the definition,

19   here's the support for it, it's this point-to-point

20   exclusive physical and electrical connection between one

21   computer and one sound reproduction device.

22         There's nothing about just touching.  There is an

23   example of it in the specification which there the examples,

24   it's cables, just like the speakers are connected to your

25   stereo system physically and electrically by cables, here in

1    this specification the example is cables.

2           And again, in the '765 patent, which is also part

3    of the intrinsic record, because it's the parent, you'll see

4    on slide 35, that's additional intrinsic support because it

5    says, well, let's physically connect it.  Well, there's a

6    claim that says physically connected via cable.

7           So, the intrinsic record fully and exactly supports

8    our construction.  There's nothing else intrinsically in the

9    record, in the intrinsic evidence that contradicts it or

10   that supports SDI's construction and their result, their

11   construction just cannot stand because touches only is not a

12   physical and electrical connection and it leads to this

13   floating in midair.

14           **THE COURT:**  I understand.  I'll hear SDI.

15           **MR. GRAUBART:**  Thank you, your Honor.

16           **MR. LOWRIE:**  Thank you, your Honor.

17           A couple of points.  First of all, what happened

18   here is the claims are being written to cover the sound dock

19   where you've got that 30 pin connector that's being plugged

20   in.  This has got nothing to do with what's in the

21   specification as described.  So, when Mr. Graubart comes out

22   and says here it is in the figures, those figures are block

23   diagrams, they don't actually really show anything in the

24   physical real world, nor is there a description of what it

25   means to be exclusively physically connected.

```
 1            Now, let's go back and talk again about what is it
 2     we're talking about here.  We have a claim connect
 3     limitation about configured to provide a physical and
 4     electrical connection.  What is it about a connector that
 5     actually does that that makes it an exclusive connection.
 6     And this was added to distinguish prior art where you've got
 7     a connector that's connecting to a network.  Well, if you're
 8     just looking at what's in the speaker all you've got is, and
 9     the connector, you've just got this plug that's getting
10     plugged in.  And that's part of the problem with, frankly,
11     all of these claims is they keep trying to put in
12     limitations that they say make it patentable but somehow
13     aren't part of the claim.  So we're going to limit it to a
14     computer that does these, gets it from these different
15     sources, but a computer's not part of the claim.  And we're
16     going to limit it to a connector that's exclusively
17     physically and electrically connected, but we're not going
18     to say it, but actually, I mean, on the other end of it's
19     exclusively, because all we've got is something that plugs
20     in.
21            THE COURT:  But that's not improper, is it, under
22     the patent law?
23            MR. LOWRIE:  Yes, actually it --
24            THE COURT:  I guess I'm just curious here.
25            MR. LOWRIE:  Uh-huh.
```

1          **THE COURT:**  The claim, of course, is what is --

2     what my duty is to construe is the claim and I'm not

3     supposed to read in limitations and I'm supposed to give

4     weight to the entire language because it describes the metes

5     and bounds of the right to exclude which the patent has

6     conferred.  So, that's the exercise.

7          Now, so long as I can understand the limitation and

8     it makes sense in the patent as a whole, I imagine that I

9     should go with such an interpretation.

10         I have trouble with your touches only.  It puts in

11    a different concept here.

12         **MR. LOWRIE:**  Well, maybe the touches only isn't

13    quite the proper way to formulate it.  But the problem from

14    the patent law perspective is you need to be able to look at

15    the connector and say, okay, that's a connector configured

16    just for a physical connection, for example.  And there's

17    no, there's nothing about any connector, certainly not

18    described in the patent, that says how something is

19    configured for an exclusive physical connection.  They point

20    to figures but they're block diagrams, they don't even tell

21    you really what's in it.  And it's not -- and, for example,

22    if you're looking at a cable does that have a connector on

23    both ends?  Most people would say it does.  Is that an

24    exclusive connection?  I don't know.

25         **THE COURT:**  Well, I guess, I guess I don't

1  understand what's wrong with their proposed construction

2  here.  A connector that's configured and it has a physical

3  and electrical connection, and then they are specific, that

4  couples, at any one time, a single sound reproduction device

5  to a single computer in point-to-point fashion.  That's -- I

6  think I understand that.  And that seems, it seems to be

7  borne out by the prosecution history.

8         MR. LOWRIE:  But it's not borne out by the patent

9  application itself in the year 2000 when it was filed.

10  That's not something that's discussed.  That's part of the,

11  part of the problem here.  So when they come in ten years

12  later and look to distinguish network by saying exclusive

13  physical connection you can't tell what that actually means.

14         THE COURT:  I hear you.  But at least for the

15  purposes of today's construction, I'm adopting, as to the

16  language denominated 4 here, I'm adopting Bose's proposal.

17  All right.

18         Then we'll go on then, I think I've done 5.  I've

19  done 6.  Let's look at 7.

20         We've got user function of the sound reproduction

21  device, sound reproduction system/computer.  I'll hear Bose.

22         MS. LUSSIER:  As to this term, our relevant slide

23  starts at page 49.  These terms are in this patent.  In the

24  course of prosecution there was set out a definition of what

25  each was, as well as correspondingly for each, examples of

 1    support in the specification for each one.

 2            SDI has not in any of its briefing addressed any of

 3    the arguments that we've raised, meaning they haven't

 4    objected to what --

 5            **THE COURT:**  Well, they say it needs no

 6    construction.

 7            **MS. LUSSIER:**  That's right.  And their briefing is

 8    absolutely silent on anything that we --

 9            **THE COURT:**  Well, are you okay with that?  In other

10    words --

11            **MS. LUSSIER:**  We would be okay with no

12    construction.

13            **THE COURT:**  All right.  And that's their position,

14    so we'll give it no construction.  So that takes care of

15    that.

16            Then on 8, we are concerned with the term audio

17    signal processing circuitry.

18            Let me try something out on this.  I rather like

19    the phrase circuitry that modifies an audio signal.  Their

20    proposal is, it says any circuitry, and then they add

21    including by amplifying it.  Suppose I strike those out but

22    just simply say audio signal processing circuitry is

23    circuitry that modifies an audio signal.

24            How do you feel about that, Bose?

25            **MR. GRAUBART:**  We're perfectly okay with that, your

1    Honor.

2              THE COURT:  SDI?

3              MR. LOWRIE:  Well, I guess we're okay with that in

4    that we believe modifying includes amplifying, and the

5    problem, I mean, if you get something in the --

6              THE COURT:  I'm not, I'm not disputing it, but I'm

7    expressing no opinion on it, in the sense that I make it a

8    pretty much unalterable principle.  I know we've had the

9    prior litigation.  So I've got some sense about the accused

10   device.  But I'm focusing now on this patent and my duty in

11   this patent.

12             So if I express no opinion on amplifying, but I'm

13   not excluding it, you're okay?

14             MR. LOWRIE:  Not actually, your Honor, because let

15   me describe what will happen.  We'll come in and we'll say

16   it's amplifying, we already have, that it includes

17   amplifying as a form of modification.  Bose will say no and

18   that will get dumped as a claim construction issue to the

19   jury.  So --

20             THE COURT:  No, it won't because I may then have to

21   decide it.  But I don't have to decide it now.  And so for

22   now I'm, I'm simply going to construe it as circuitry that

23   modifies an audio signal.

24             All right.  Then we're up to the 10th proposed, and

25   last proposed dispute where we're disputing the phrase an

1    assemblage of music files based on a first type of metadata

2    included in the music files.

3         And let me, on this one, let me make a proposal.

4    It's taken -- well, I think this is SDI's.  I rather like to

5    define that as a first group of music files that is based on

6    a first type of metadata that is located in the music file

7    which may be in the file header.

8         How's that?  Bose?

9         **MR. GRAUBART:**  Your Honor, with respect to the use

10   of the word group as opposed to first group and -- excuse

11   me.  The difference between what you just said, your Honor,

12   and Bose's proposal is the institution of the words first.

13   That's okay.  We thought that our construction was closer to

14   the intrinsic record.  But it doesn't make a big difference.

15   Such as in the file header, may or may not be in the file

16   header, we propose that it's just simply more confusing for

17   the jury to have, well, is the limitation does it have to be

18   in the file header or can it not be, when it's just an

19   embodiment, it doesn't have to be in the file header.

20   That's what I'm saying.

21        **THE COURT:**  Well, I'm trying to explain.  So, I

22   didn't go along with their -- actually I don't think their

23   proposal is that much different.  Which may be in the file

24   header.  That's not a limitation that it has to be in the

25   file header.  But it may be in the file header.  And their

1   proposal is such as in the file header.  I don't read that

2   as a limitation either but --

3            **MR. GRAUBART:**  Understood, your Honor.  And I

4   was --

5            **THE COURT:**  So you're okay?

6            **MR. GRAUBART:**  We believe that including that is

7   going to be a little more confusing for the jury.  But if

8   you could maybe add, your Honor, or elsewhere in the file, I

9   think that would remove any ambiguity for the jury.

10           **THE COURT:**  Thank you.

11           How do you like, I go with what I've said, with

12   their amendment?

13           **MR. LOWRIE:**  That's fine, your Honor, thank you.

14           **THE COURT:**  All right.  And so we'll add -- say

15   those last words again.

16           **MR. GRAUBART:**  Or elsewhere in the file.

17           **THE COURT:**  Or elsewhere.  Good.

18           Now, that doesn't end it because you've got concern

19   about, and I'll read it, concern about the phrase, quote, a

20   subset of the assemblage of music files based on a second

21   type of metadata included in the music files, closed quote.

22           And I'll try this.  Again, I'm most comfortable

23   with SDI's approach, but I've changed two words.  Or two

24   phrases.  And I'll read it the way I would do it.

25           A second group of music files that is, A, a subset

1  of the first group, and B, based on a second type of

2  metadata that is located in the music file which may be in

3  the file header.  That's the same issue.  But I've

4  substituted the word located for the word stored, and if I

5  added the or elsewhere language, simply because the symmetry

6  seems to work, how does Bose feel about that?

7       **MR. GRAUBART:**  I think that's fine, your Honor.

8  Just to clarify, in the first term that we just talked

9  about, does the construction still have the word stored or

10  did you change that to located?

11      **THE COURT:**  I changed it to located.

12      **MR. GRAUBART:**  Okay.

13      **THE COURT:**  So we're clear.

14      **MR. GRAUBART:**  So, we're fine with the new proposal

15  as well, the second term.

16      **THE COURT:**  Thank you.  And agreed?  It's your

17  proposal.  I changed the word stored to located, and instead

18  of saying such as in the file header, I now say which may be

19  in the file header or elsewhere in the file.

20      **MR. LOWRIE:**  Yes, the latter part of the change as

21  you have done consistent with before is okay.  I hadn't

22  appreciated that stored was changed to located.  Both

23  parties had proposed stored.  I'm not actually aware of a

24  difference, that it makes a difference.  So, I just hadn't

25  thought about it coming in, it's not part of the proposal.

```
 1            THE COURT:  I think located is a better

 2   conceptualization.

 3            All right, that concludes the work we came here to

 4   do.  Now, I'm going to recess.  And I appreciate your head

 5   man is off in China doing some -- well, I won't characterize

 6   it.  But they've got a decision maker here.  My instinct is

 7   if they go for this, as we've carefully worked it out, I am

 8   going to administratively close this case until

 9   December 13th, 2014, and place the case on the March 2015

10   trial list.

11            So, they'll confer.  If they tell me no, we'll talk

12   more.  Because it has those limitations.  And I'll recite

13   them again.  They agree to a bond which covers the cost,

14   covers the profit from the sale of the alleged infringing

15   devices, and they agree that validity will not be part of

16   any ensuing trial if trial there is to be.

17            And we'll recess.  I'd like to know this morning.

18   So, I'll have the clerk, I'm going back to chambers, but the

19   clerk will stay close by and you let her know if that's all

20   right, and if it's not I'll come back on the bench.

21            Thank you all.  We'll recess.

22            Oh, there's one very important point.  And it's

23   this.  It's the first one which I said I would duck.  Or I

24   said I would take under advisement.  And candidly, I'm

25   trying to duck it.  I always try to be transparent.  For
```

1     what seems to me appropriate prudential reasons, I will seek

2     to avoid a construction different than the Patent Trial

3     Appeal Board.  I came out on the bench and indeed I had

4     thought prior to reading the decision of that body that, to

5     give proper weight, proper interpretation to the word

6     plurality that the conception as described that the computer

7     would have different sources for the data, so the words at

8     least two was appropriate.

9            Counsel have ably argued the issue.  And your

10    briefs have ably argued the issue.  And now I am aware,

11    which I had not been, this is a new process and this is my

12    first chance actually to look at what this agency does, the

13    short of it is, I would just as soon not take a position

14    opposite to that of the Patent Trial Appeal Board.  But I'm

15    not hesitant to do so should I believe that such is the

16    correct construction.

17           Hopefully, we will now stay things, your costs will

18    not be devoted to this Court but rather to proceedings

19    before the agency.  If those proceedings eventuate in a

20    situation where there must be a trial, I'm going to advise

21    you, you best have your experts opine to deal with the

22    possible constructions that are on the table here, at least

23    one, or one or at least two.  I just think again that's

24    practically appropriate, and I will be looking at it at an

25    appropriate time.

```
1          This has been, let me say, because we have people

2    from the actual companies here, this has been very well

3    prepared.  I have been aided by the briefs and materials

4    coming out on the bench.  I've been aided by the Patent

5    Trial Appeal Board.  And I have been aided by your oral

6    arguments and I appreciate them.

7          So we'll recess and see how SDI wants to proceed.

8    We'll recess.

9          MR. HEBERT:  Your Honor, a practical question in

10   terms of the stay provisions that you proposed.

11         In connection with the bond, I presume they would

12   need --

13         THE COURT:  Submit it to the Court.

14         MR. HEBERT:  -- an accounting or something to show

15   what, you know, what that is calculated to be.

16         THE COURT:  You may -- if they're going to come up

17   with a bond they'll give you whatever they give you.  You'll

18   say whatever you say.  I'll resolve whatever I resolve.

19         MR. HEBERT:  I understand.

20         THE COURT:  The case is administratively closed.  I

21   don't like the word stay.  But other than working out that

22   wrinkle.  Because that's, it's fair for them to post an

23   adequate bond.  It's in their interest to post an adequate

24   bond.  It saves them money.  So they'll want to satisfy you

25   on that.  I'll resolve it.  Other than that, the case is
```

1   administratively closed.  People are not going to notice

2   depositions, demand discovery and the like until the 13th of

3   December, 2014.  Then it is restored to the trial list and I

4   will expect the next day to hear from you people and we'll

5   see where we are.

6         If the case were to settle, I can hear from you any

7   time and we'll reopen it for that purpose.

8         I do thank you.  We'll recess.

9         MR. LOWRIE:  Thank you, your Honor.

10        MS. LUSSIER:  Thank you, your Honor.

11        THE CLERK:  All rise.

12        (Recess.)

13        THE CLERK:  All rise.  Court is back in session,

14  you may be seated.

15        THE COURT:  You asked me to come back.

16        MR. LOWRIE:  Yes, thank you, your Honor.

17        The short answer is we accept.  We wanted to raise

18  two quick issues.  One isn't opposed.  And that's that by

19  posting a bond we're not conceding or even providing

20  evidence that lost damages would be appropriate or what

21  those would be.  We're just --

22        THE COURT:  The Court, quick to put it on the

23  record, surely expresses no such opinion.  I'm simply trying

24  to safeguard the rights of the parties, whatever they may

25  be.

1          **MR. HEBERT:**  Well, we agree.  It's a matter of just

2     preserving the assets and we would still need to prove

3     damages.

4          **THE COURT:**  And thank you.

5          **MR. LOWRIE:**  And then the second piece, your Honor,

6     was we're not like conditioning or entering into any kind of

7     negotiation or bargaining because, I began with we accept

8     and we're grateful for your Honor's considering what we

9     suggested.

10         But my client asked me to raise one issue for your

11    Honor to consider, which is we've raised before your Honor a

12    couple of written description things about does the patent

13    application in 2000 really support something that covers

14    iPods and MP3 players.  We're not permitted to present that

15    to the board and we would like the opportunity to have it

16    considered on remand.  We would waive all the prior art

17    validity stuff, whether it could be presented to the board

18    or not.  But there is this one little bit of an argument

19    that's been put to your Honor in the context of claim

20    construction.  It's a different -- you know, you don't have

21    to get into all this stuff like a regular prior art case,

22    that would all be waived.  And as a matter of fairness,

23    because we couldn't present it to the board, we would ask

24    your Honor to consider it either now or say you're at least

25    not foreclosing us requesting it if we should find ourselves

1    before you again.

2           THE COURT:  No, I am.  I mean, I'll clarify it.  In

3    a way, this is a compromise situation.  There are lots of

4    prudential reasons for making that request of you, to limit

5    further proceedings and the like.  You've accepted it.

6    That's the implication.  And I thank you, though I'm happy

7    to clarify it.

8           I think this is very wise.  Should the case

9    resolve, really, cut your costs, a phone call to Ms. Gaudet

10   is all that's necessary, and you can put whatever else you

11   want, if anything, on the record.  Otherwise, the order

12   stands and I'll be in a position to deal with the matter

13   starting on December 14th, with trial on the March 2015

14   running trial list.

15          MR. HEBERT:  Just a clarification, if I may.  I

16   think it's clear, but I don't want there to be any

17   misunderstanding.  The preclusion on validity goes to

18   summary judgment as well.

19          THE COURT:  I'm just not considering validity.

20          MR. HEBERT:  Yes.

21          THE COURT:  If this case comes back here and what

22   was before the Patent Trial Appeal Board results in the

23   conclusion of validity as to what was before them, the deal

24   is that I'm not considering validity.

25          MR. HEBERT:  Thank you.

1    **THE COURT:**  Everything else is open.  Infringement,

2    damages.  It's a trial.  But we'll have a truncated time to

3    prepare because it's a narrow trial.

4    **MR. LOWRIE:**  And if I may, your Honor.  There's

5    something that, we would not have brought summary judgment

6    on the notion that we only waived trial and not summary

7    judgment.

8    The board's claim constructions are preliminary.

9    It's possible Bose could come in and successfully argue for

10   some other construction and let your Honor adopt.  I assume

11   we could raise that in front of your Honor at the

12   appropriate time.  I mean --

13   **THE COURT:**  Well, I've now held this hearing and

14   but for the one source/two source issue, which I really am

15   reserving on.  When we went back in the hall the law clerk

16   said to me, well, shall there be an order?  And I said yes,

17   but we don't have to put our reasoning, just an order so we

18   know what I've done.

19   But like all Markman constructions, it's not over

20   until it's over.  I've always thought of them as law of the

21   case.  Sometimes you get into a trial and a proposed

22   construction just won't work.  At the same time, it is law

23   of the case.  So, to be asked to reconsider cuts against the

24   usual tendency that once something's decided you go forward.

25   I don't think I'm saying anything other than the general

1    approach I take to things.

2              MR. LOWRIE:  Understood.  That's perfect, your

3    Honor.

4              THE COURT:  Obviously, my mind is not closed.  If I

5    have the duty to preside over a resolution of this case, I

6    will preside over it as fairly and impartially as I can.

7    But the deal is, if they're back here with a valid patent

8    from the Patent Trial Appeal Board then I'm not considering

9    any validity issue.

10             MR. LOWRIE:  Understood, your Honor.

11             THE COURT:  All right.

12             MR. HEBERT:  And it should be clear to

13   the defendants but --

14             THE COURT:  It's like each of you wants the last

15   word.  I think we're all agreed.

16             MR. HEBERT:  Yes.

17             THE COURT:  But go ahead.

18             MR. HEBERT:  I just wanted to make a record that we

19   are, of course, going to try to convince the PTAB on the

20   construction of any one of a plurality of sources.  And we

21   still have that opportunity.

22             THE COURT:  That's fine.  I'm, I'm coming more to

23   appreciate and understand, as we all are, how this process

24   works.  And I am extraordinarily jealous of the rights, I

25   won't say rights, the duties of the nation's courts and the

1    constitutional rights of the nation's juries.

2          Now, that's subject -- well, constitutional issues

3    aren't subject.  But congress disposes.  Congress has

4    disposed.  And I am wrestling with how, as we always do with

5    statutes, how to make the statute work best.  In my mind,

6    the resolution we've reached here is for this particular

7    case the best way to coordinate the work of two adjudicatory

8    bodies.  So, nothing I've said -- although there's going to

9    be an order without an opinion, it will duck the one and

10   two, but it will give my constructions as to the others and

11   do whatever you want.  And anymore would be my typical

12   overspeaking.

13         Go and litigate before the board.  And I would be

14   delighted on a personal level to see you back but hope that

15   the matter will be resolved somehow.

16         Thank you for your time this morning.

17         **MR. LOWRIE:**  Thank you, your Honor.

18         **MR. HEBERT:**  Thank you, your Honor.

19         **THE COURT:**  We'll recess.

20         **THE CLERK:**  All rise.

21         (Whereupon the matter concluded.)

22

23

24

25

1                      C E R T I F I C A T E

2

3

4           I, Donald E. Womack, Official Court Reporter for

5    the United States District Court for the District of

6    Massachusetts, do hereby certify that the foregoing pages

7    are a true and accurate transcription of my shorthand notes

8    taken in the aforementioned matter to the best of my skill

9    and ability.

10

11

12

13

14           /S/ DONALD E. WOMACK 1-17-2014
             _____
15                  DONALD E. WOMACK
                 Official Court Reporter
                    P.O. Box 51062
16           Boston, Massachusetts 02205-1062
                  womack@megatran.com
17

18

19

20

21

22

23

24

25